RECEIVED
IN ALEXANDRIA, LA

FEB 11 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

SHANE LEMONS

VS.

WARDEN BURL CAIN

CIVIL ACTION NO. 07-1788

SECTION P

JUDGE DRELL

MAGISTRATE JUDGE KIRK

### REPORT AND RECOMMENDATION

Before the court is petitioner Shane Lemons's *pro se* petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on October 25, 2007. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, where he is serving the life sentence imposed following his February 2005 conviction for aggravated rape in Louisiana's Ninth Judicial District Court, Rapides Parish.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** pursuant to the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

### Statement of the Case

On June 24, 2004 the Rapides Parish Grand Jury indicted petitioner on a charge of aggravated rape. Petitioner waived his

right to trial by jury and on February 23, 2005 he was found guilty as charged following a bench trial. Petitioner's motions for a new trial were denied and on April 22, 2005 he was sentenced to life without benefit of parole. He filed a motion for an appeal and the Louisiana Appellate Project was appointed to represent him.  On appeal, petitioner argued two assignments of error: (1) sufficiency of the evidence, and, (2) the trial court erred when it failed to order a pre-sentence investigation and I.Q. test prior to sentencing. [doc. 1-3, pp. 1-2; doc. 1, ¶6; Exhibit B, doc. 6-2, pp. 14-35]

On February 1, 2006 the Third Circuit affirmed petitioner's conviction in an unpublished opinion. State of Louisiana v. Shane Demarcus Lemons, 2005-00904 (La. App. 3 Cir. 2/1/2006), 924 So.2d 517 (Table). [See Slip Opinion, Exhibit A, doc. 6-2, pp. 1-13]

On February 16, 2006 petitioner filed a pro se application for writ of certiorari in the Louisiana Supreme Court. Petitioner again argued two claims for relief: (1) sufficiency of the evidence and (2) failure of the trial court to order a pre-sentence investigation. [Exhibit C, doc. 6-3, pp. 1-16]

On November 17, 2006 the Supreme Court denied writs. State of Louisiana v. Shane D. Lemons, 2006-1051 (La. 11/17/2006), 942 So.2d 33. [Exhibit D, doc. 6-3, p. 17]

Petitioner did not seek further review in the United States Supreme Court. [doc. 1, ¶6(d)]

Page 2

On February 28, 2007 petitioner filed an Application for Post-Conviction Relief in the Ninth Judicial District Court claiming ineffective assistance of appellate counsel. [Exhibit E, doc. 6-3, pp. 18-35]

According to petitioner this pleading was dismissed without a hearing on some unspecified date, and he did not seek further review because, he "... was seeking help with law work..." [doc. 1, ¶8(b)]

Petitioner signed his memorandum in support of the petition for *habeas corpus* on October 19, 2007 [doc. 1-3, p. 37]; it was presented to prison officials for mailing on that same date. [doc. 6-3, p. 39]; the pleading was mailed on October 22, 2007 [doc. 1, p. 8]; and it was received and filed on October 25, 2007. He argues three claims for relief: (1) sufficiency of the evidence; (2) trial court abused its discretion by failing to order a pre-sentence investigation report and I.Q. test prior to sentencing; and, (3) the failure to grant *habeas* relief would result in a fundamental miscarriage of justice. [doc. 1-3, p. 12]

### Law and Analysis

Petitioner apparently exhausted his federal *habeas corpus* claims by raising those claims in a procedurally correct manner in the Louisiana Supreme Court *via* the direct appeal process. Further, it appears that petitioner's federal *habeas corpus* petition was filed within the limitations period defined by 28

Page 3

U.S.C. §2244(d). Finally, it does not appear that petitioner's federal claims were dismissed as procedurally defaulted by the Louisiana courts.

Nevertheless, for the reasons that follow, petitioner's *habeas corpus* petition is ripe for dismissal on initial review.

## 1. Rule 4 Considerations

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." (See also Kiser v. Johnson, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Based upon the court's review of the pleadings and exhibits, it is recommended that the application be summarily dismissed for the reasons that follow.

## *2. Standard of Review*

A *habeas* petitioner whose claims were adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d).

Claims One and Three (sufficiency of the evidence of penetration/miscarriage of justice) and Claim Two (abuse of discretion, pre-sentence investigation) were adjudicated on the merits on direct appeal. Since these claims were adjudicated on the merits, petitioner is not entitled to relief unless he can demonstrate that the state courts' adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The phrase "clearly established" refers to the holdings, as opposed to the *dicta*, of the United States Supreme Court as of the time of the state-court decision being scrutinized. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, "clearly established Federal law" refers to the governing legal principle or principles set forth by holdings of the United States Supreme Court at the time of the state court's decision. See *id.*, at 405, 413, 120 S.Ct. 1495; Bell v. Cone, 535

U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A state court's decision is "...contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, *supra*, at 405-406, 120 S.Ct. 1495; see also Bell v. Cone, *supra*, at 694, 122 S.Ct. 1843.

Additionally, with regard to the phrase "unreasonable application," federal *habeas* courts may grant the writ only if the state court identified the correct governing legal principle but then unreasonably applied that principle to the facts of the case. *Id.*, at 413, 120 S.Ct. 1495. In other words, before relief may be granted, the *habeas* court must first conclude that the state court's application of federal law was more than merely incorrect or erroneous. *Id.*, at 410, 412, 120 S.Ct. 1495. The state court's application of clearly established law must have been objectively unreasonable. *Id.*, at 409, 120 S.Ct. 1495 (emphasis supplied). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

Page 6

established federal law erroneously or incorrectly." <u>Williams v.
Taylor</u>, 529 U.S., at 411, 120 S.Ct. 1495. Instead, the
application must be <u>objectively unreasonable</u>. *Id.*, at 409, 120
S.Ct. 1495; <u>Bell v. Cone</u>, *supra*, at 699, 122 S.Ct. 1843; <u>Woodford
v. Visciotti</u>, 537 U.S. 19, 27, 123 S.Ct. 357, 154 L.Ed.2d 279
(2002) *(per curiam)*.)

### 3. Claim One – Insufficiency of the Evidence

Petitioner contends that the evidence of penetration, an
element of the offense of aggravated rape under Louisiana law,[1]
was legally insufficient to support his conviction. When it
reviews the legal sufficiency of the evidence, a federal court
must consider whether, viewing all the evidence "in the light
most favorable to the prosecution, any rational trier of fact
could have found the existence of facts necessary to establish
the essential elements of the offense beyond a reasonable doubt."
<u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979). All credibility choices and conflicting
inferences are to be resolved in favor of the fact-finder. <u>United
States v. Cyprian</u>, 197 F.3d 736, 740 (5th Cir.1999), *cert.
denied*, 531 U.S. 822, 121 S.Ct. 65, 148 L.Ed.2d 31 (2000).

---

[1] La. R.S.14:41 defines "rape" as "... the act of ... vaginal sexual
intercourse ... committed without the person's lawful consent.  Emission is
not necessary, and <u>any sexual penetration</u>, when the rape involves vaginal ...
intercourse, <u>however slight</u>, <u>is sufficient to complete the crime</u>." Petitioner
was charged with aggravated rape because his victim was ten years old at the
time of the offense. See La. R.S.14:42(A)(4).

The court must determine if the evidence was constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." Brown v. Collins, 937 F.2d 175, 181 (5th Cir.1991) (quoting Jackson, 443 U.S. at 324 n.16). The court need not find that the evidence excluded every reasonable hypothesis of innocence or was wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could have found that the evidence, whether direct or circumstantial, and all reasonable inferences drawn from it established guilt beyond a reasonable doubt. United States v. Salazar, 958 F.2d 1285, 1294 (5th Cir.), cert. denied, 506 U.S. 863, 113 S.Ct. 185, 121 L.Ed.2d 129 (1992).

The issue of sufficiency of the evidence of penetration was raised as Assignment of Error Number One on direct appeal to the Louisiana Third Circuit Court of Appeals. Petitioner's current argument in support of habeas corpus is identical to the argument presented by his court-appointed appellate counsel to the Louisiana Third Circuit Court of Appeals. [Compare Brief of Appellant, Exhibit B, doc. 6-2, pp. 24- 32, and Memorandum in Support of Habeas Corpus, doc. 1-3, pp. 13- 28]

Petitioner has provided a copy of the Third Circuit's unpublished opinion on appeal. A review of that document reveals that, with respect to the sufficiency of the evidence claim, the

court applied the appropriate standard enunciated by the Supreme Court in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See <u>State of Louisiana v. Shane Demarcus Lemons</u>, 2005-0904 at pp. 1-8. [doc. 6-2, Exhibit A]

Further, the appellate court recited the salient facts along with relevant conclusions of law as established by the trial record. As is shown hereinafter, each of the facts relied upon by the trial court was admitted to by the petitioner in his Memorandum of Law, which, as stated, is identical to the brief submitted on his behalf on appeal. In determining sufficiency of the evidence on appeal, the Third Circuit made the following observations:

> B.T. (the victim) testified that on the evening of March 21, 2004, she went to the Defendant's bedroom to ask him to play a video game with her. She said that when she asked him, he pulled her into the room and began to touch her 'in the front.' She said that he then pulled her on the bed, unzipped his pants and pulled down hers, laid on top of her and put his penis on her.[2]
>
> The Defendant also testified regarding the incident, stating that the victim came into his bedroom and 'touched me on my private, I touched her on her private.' He stated that the victim then climbed on top of him with her pants down and that he had his 'thing'

---

[2] See Memorandum, doc. 1-3, p. 6, "At trial, the victim, then ten years old, testified that on 21 March 2004, she was at home ... she said that, when she went up to her uncle to ask him a question, he brought her into his bedroom and started touching her... The victim stated that her uncle then pulled her on the bed, unzipped his pants and got on top of her. She said he then pulled down her pants and put his penis on her. The victim testified that the defendant put his penis on the outside of her 'front,' and that she did not feel anything on the inside."

out.[3]

... Shameka Butler ... saw through the open door to the Defendant's bedroom that B.T. was on top of the Defendant and that she was naked from the waist down...[4] The Defendant testified that he fled the house because he was scared of his brother and went to a police station to confess the incident.

... The Defendant signed a waiver of rights form prior to his interrogation. He also stated that he understood his rights and waived them at the beginning of the taped interrogation which appears in the record.[5] He did not argue at trial, nor does he argue on appeal, that the waiver of his Miranda rights was made unknowingly or involuntarily. Instead, he contends that he did not understand what the officers were asking him and that he would not have confess to penetrating the victim, but for the fact that the police suggested to him that it happened.

Our review of the taped confession does not reveal any coaching by officers during the interrogation. The Defendant did not state at trial that officers had 'put words into his mouth,' but instead he focused on his own nervousness and confusion during the interrogation. Explaining why there was a difference between his

---

[3] Doc. 1-3, p. 9, "Mr. Lemons stated that his niece touched him on his 'private' and the touched her on her 'private.' He said he sat on the bed, and she pulled her pants down and climbed on top of him. He said he unzipped his pants, and she was on top 'hunching' him when Ms. Buckner ... caught them."

[4] Doc. 1-3, pp. 6 -7, "Shaneka Butler ... walked in the room and saw them... she passed an open doorway and saw Shane Lemons with the victim. She said that the victim was naked from the waist down."

[5] Doc. 1-3, pp. 10-11, "Mr. Lemons testified that he rode his bike to the Police Station where he reported that he had molested his niece. He said they did not believe him at first... Mr. Lemons stated that he was talking to the Police just to get away from his brother... He said he did not understand all of their questions. Mr. Lemons admitted that he told the officers that he 'put the head in.' ... He said he did not know what that meant, so the officers explained it to him. Mr. Lemons said he was not trying to put his 'private part' in the girl. He said he told the police he did it, when they asked, because of the fact that he had his 'thing out,' and he began to think 'it could have happened that way.' Mr. Lemons denied that he put his penis in victim's vagina; he admitted that his penis was touching the outside of her vagina when she was 'hunching' him, but insisted that it did not touch the inside."

police statement and his trial testimony, the Defendant
stated:

> Because they – they both was questioning me,
> you know... it's getting me nervous ... I'm
> beat up, I'm hurt, I just confused, I don't
> know what to do.

In written reasons, the trial court considered each of
these issues stating:

> Mr. Lemons decided to testify, he was not
> required to do so, there would have been no
> presumption raised if he had elected or
> decided not to testify. But his testimony was
> significant in the Court coming to the
> decision that it has come in this case.
> First, there is a statement to the police on
> the evening of the incident in which it's
> uncontradicted that Mr. Lemons went to the
> police station on his own accord... The
> statement was played for the benefit of the
> Court, along with the transcript of that
> statement and it is clear to the Court that
> there was no confusion questions posed, no
> intimidation, ... nothing that the Court
> would view as harassment. The questions are
> straightforward, they're plain, they're clear
> and the Court believes that Mr. Lemons
> understood the questions and the Court
> understands his answers to them. He is the
> one without any prior suggestion by the
> detectives, to sate in that statement, 'I end
> up taking my thing out and I just put the
> head in.' And then he makes a repeated
> statement shortly thereafter again that, 'I
> put the head, just the head' and that he put
> it in her vagina... If there was anything
> said by Shane Lemons that struck this Court
> as being credible, was his testimony that he
> knew that what occurred that night and what
> he was doing and what he did was wrong...

> ... it is the role of the fact finder to determine the
> credibility of a witness and his testimony. The trial
> court considered the Defendant's state of mind at the
> time of his confessions and the factors that he asserts
> on appeal were relevant thereto. The trial court was in

a superior position to determine the credibility of the
Defendant's confession and trial testimony. This court
will not second guess that determination.

The Defendant also argues that the victim's testimony
and the medical evidence ... failed to prove that
penetration had occurred. In support of this argument,
the Defendant suggests that medical evidence was not
conclusive of penetration and states that this
assertion is supported because the victim denied that
penetration occurred during the encounter.

At trial, Dr. Francis Marion Brian, Jr., testified
regarding the victim's examination report, which had
been completed by his predecessor, Dr. Wesley Dyer...
The report contained two sections: a sexual assault
history and a sexual assault examination. The history
contains a description of the assault provided by the
victim which states that she went into her uncle's
room, and he grabbed her and put her on his bed. He
then pulled her pants down, unzipped his pants, and
penetrated her vaginally.

Dr. Brian testified that Dr. Dyer's findings upon
examination were that the victim's hymen was intact and
there was no obvious trauma. The notes indicate that
Dr. Dyer was unable to admit his small fingertip into
the vaginal orifice and that he noted the presence of
bloody aspirate on washings. Dr. Brian explained that
saline is used to wash the area and the specimen
collected was the bloody aspirate, which indicates
either trauma further up or an infection. Dr. Brian
also testified that the laboratory results of the
aspirate were negative for sperm and seminal fluid
presence.[6]

---

[6] Doc. 1-3, pp. 4-6, "Dr. Francis Marion Brian, Jr., the Rapides Parish
Coroner, testified as to the report of Dr. Wesley Dyer, his predecessor, who
was the doctor who examined the victim... Dr. Brian testified that he could
identify the handwriting of Dr. Dyer, who was deceased. ... Dr. Brian related
that it is usually the police reporting officer, not the physician who fills
out the top two-thirds of the sexual assault history form, and sometimes the
historical information ... He explained that, in this case, the victim's
description of the assault was not in Dr. Dyer's handwriting ... (In that
section, it was written that the victim stated that her uncle 'unzipped his
pants and penetrated her vaginally.' Dr. Brian additionally testified that
the fact the victim's hymen was intact does not negate the possibility of
penetration... When asked whether there was any indication of penetration in
the present case, the doctor answered that 'the bloody aspirate is of

The Defendant argues on appeal that this medical evidence does not prove beyond a reasonable doubt that penetration occurred because the victim's hymen remained intact and the vagina would not even accept a fingertip.

During the victim's testimony, she stated that the Defendant 'put his penis on me.' When asked where he put his penis on her, she responded, '[i]n the front.' When questioned further, the victim explained she meant that the Defendant put it '[l]ike on the outside of it[,]' and that she did not feel anything on the inside.' Later she said that she felt the Defendant put his penis on the outside of her private part, but that she did not feel in on the inside.[7]

*   *   *

While the medical examination did not definitively establish that the child had been penetrated, Dr. Brian explained that the absence of such physical evidence does not mean that penetration did not occur. Dr. Brian also stated that the victim's hymen may have been left intact despite penetration if only a portion of the

---

significance,' and stated that it could indicate 'trauma further up.'... The doctor explained that an aspirate is a fluid collected from washings, that, in order to obtain specimens intra-vaginally, saline solution is sprayed in the area and the washings are collected ... Dr. Brian stated that Dr. Dyer reported that there was a small amount of blood, or bloody aspirate, found in the washings of the victim... Dr. Brian stated that an infection could cause a bloody aspirate ... He indicated that, although you would not expect to see bloody aspirate from an infection in a pre-pubescent child, it was nevertheless possible ... Dr. Brian testified that Dr. Dyer used a device to measure the hymen of the victim... He stated that the admission of the fingertip is a method used to measure the hymen, but acknowledged that Dr. Dyer was not using his fingertip to measure in this case, when Dr. Dyer reported that the vaginal orifice would not admit a little fingertip."

[7] See Memorandum, doc. 1-3, p. 6, "At trial, the victim, then ten years old, testified that on 21 March 2004, she was at home ... she said that, when she went up to her uncle to ask him a question, he brought her into his bedroom and started touching her... The victim stated that her uncle then pulled her on the bed, unzipped his pants and got on top of her. She said he then pulled down her pants and put his penis on her. The victim testified that the defendant put his penis on the outside of her 'front,' and that she did not feel anything on the inside."

Page 13

> penis, but not all of it, was inserted.[8] Additionally, although the victim stated that she did not feel the Defendant touch her on the inside, she did state that the defendant put his penis on her. Finally, the Defendant himself stated in his confession to police that he was 'messing with' the victim's privates and that he 'end[ed] up taking my thing out and I just put the head in.' As the fact finder, the trial court could consider the credibility of the witnesses and accept, in part or in whole, the testimony of any witness.[citations omitted] Consequently, we find there was sufficient evidence of penetration to support the aggravated rape conviction. [Exhibit A, doc. 6-2, pp. 4-10]

As shown from the footnoted references to petitioner's Memorandum of Law, the petitioner does not dispute that the facts recited by the Court of Appeal are an accurate reflection of the testimony and evidence adduced at trial. Clearly, with respect to each salient fact relied upon by the Court of Appeal, the petitioner has admitted that the testimony, as recounted by the Court, was in fact adduced at his trial. While he contests the interpretation and the legal significance of those facts, he does not suggest that the Court of Appeal's version of the trial record and evidence is inaccurate.

As shown above, the Court of Appeal ultimately determined that the evidence of penetration was sufficient based upon: (1) petitioner's confession to the police; (2) the physical

---

[8] Doc. 1-3, p. 5, "Dr. Brian additionally testified that the fact the victim's hymen was intact does not negate the possibility of penetration." See also p. 26, "... the trial court relied on a negative result as though it were proof positive; the trial court was unduly influenced by the doctor's testimony that the lack of trauma to the vaginal [sic] and the fact that her hymen was intact, did not negate the possibility of penetration."

evidence, including the presence of bloody aspirate following the vaginal examination of the victim; and, (3) the victim's testimony that the petitioner put his penis "on her" in "the front."[9]

When considering a challenge to the sufficiency of evidence in a §2254 proceeding, the reviewing court must keep in mind that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir.2001) (quoting Jackson, 443 U.S. at 319). The habeas court may find the evidence sufficient even though the facts additionally support one or more other reasonable hypotheses which are consistent with petitioner's claim of innocence. Foy v. Donnelly, 959 F.2d 1307, 1316 (5th Cir.1992); see also Gibson v. Collins, 947 F.2d 780, 783 (5th Cir.1991). "The Jackson inquiry

---

[9] As noted by the Court, under Louisiana law this testimony was important because, "'[a]ny penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient.' State v. Bertrand, 461 So.2d 1159, 1161 (La. App. 3 Cir. 1984), writ denied, 464 So.2d 314 (La. 1985). See also, State v. Self, 98-39, pp. 2-3 (La. App. 3 Cir. 8/19/98), 719 So.2d 100, 101, writ denied, 98-2454 (La. 1/8/99), 734 So.2d 1229. Similarly, the Second Circuit considered an instance in which a juvenile victim stated that the defendant had 'moved up and down on her but failed to fully insert his penis.' State v. Chatman, 37,523, p. 2 (La. App. 2 Cir. 9/24/03), 855 So.2d 875, 877, writ denied, 03-2821 (La. 2/13/04), 867 So.2d. 685. The defendant argued that penetration had not occurred. Finding that penetration had, in fact, occurred, the court stated the evidence supported the conclusion that the defendant's penis 'penetrated only the external aperture of the victim's genitalia and rubbed against the labia minora, but did not go beyond the hymen into the vaginal canal. Even this slight penetration, however, is sufficient to meet this element of the crime.'Id." State v. Lemons, supra, at pp. 5-7

'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." ' Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

A sufficiency of the evidence claim presents a mixed question of law and fact. Therefore, the federal *habeas* court must defer to the state court unless its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

With respect to his sufficiency of the evidence claim, petitioner has not shown that the judgments of the Louisiana Courts "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Indeed, the evidence adduced at trial, and relied upon by the Court of Appeal satisfied the "substantive elements of the criminal offense as defined by state law." Brown v. Collins, 937 F.2d 175, 181 (5th Cir.1991). The Court of Appeal, applying the standard announced in Jackson v. Virginia, *supra*, concluded that

Page 16

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the element of penetration was proven beyond a reasonable doubt.

Thus, under the prevailing Jackson standard, the evidence of penetration was sufficient. At the very least, petitioner has not demonstrated that the Court's finding in that regard was unreasonable. Petitioner is clearly not entitled to relief on this claim.

### 4. Claim Two - Pre-Sentence Investigation

In his second claim for relief, petitioner maintains that "... the trial court abused its discretion in denying defense counsel's request for a pre-sentence investigation and IQ test." [doc. 1-3, p. 28]

In order to prevail, petitioner must establish that he is in custody in violation of the Constitution and laws of the United States. See 28 U.S.C. §2254. It has long been established that Federal habeas corpus relief is available only for violations of federal constitutional law. Federal courts simply do not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir.1998). Petitioner has not shown that the state court's refusal to order a pre-sentence investigation was a violation of federal law. In fact, as noted by the Court of Appeals, petitioner could not even show a violation of Louisiana law, since La. C.Cr.P. art. 875(A)(1) permits, but does not

Page 17

mandate the court to order a pre-sentence investigation. Further, under Louisiana law, the purpose of the pre-sentence investigation is to aid the trial court; it is not a right of the accused. State v. Lemons, *supra*, at p. 9.

Petitioner also implies that the life sentence imposed following his aggravated rape conviction was excessive. Excessive sentence claims are analyzed as follows: First, a threshold comparison is made concerning the gravity of the offense against the severity of the sentence. If the sentence is grossly disproportionate to the severity of the offense, then, and only then, should the court compare the sentence in question to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382  (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." See United States v. Gonzales, 121 F.3d 928, 943 (5th Cir.1997). In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a state  recidivist statute and took into account the offender's prior convictions for similar offenses. The Fifth Circuit observed, "... the distinction between constitutional sentences and grossly

disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in <u>Rummel</u> falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment." <u>Gonzales</u>, 121 F.3d at 943 (footnote omitted).

Here, petitioner was convicted of a heinous crime perpetrated against a child. Considering the <u>Rummel</u> finding that a life sentence was not excessive under the fairly innocuous facts of that case, clearly, the mandatory life sentence imposed herein was not grossly disproportionate to the offense for which petitioner stands convicted. Further, the Fifth Circuit has long held that the mandatory life sentence under Louisiana's aggravated rape statute is constitutional. <u>Edwards v. Butler</u>, 882 F.2d 160 (5th Cir. 1989).

### 5. *Claim Three - Miscarriage of Justice*

Finally, petitioner maintains that the failure to grant his writ application will result in a miscarriage of justice. Upon closer examination, this claim merely restates Claim One, and rehashes petitioner's argument concerning sufficiency of the evidence. For the reasons set forth above, this claim should also be denied and dismissed.

Page 19

### 6. Conclusion and Recommendation

Since, as shown above, it plainly appears from the face of the petition and the various exhibits annexed to it, that the petitioner is not entitled to relief summary dismissal of petitioner's habeas corpus petition is appropriate.

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking**

either the factual findings or the legal conclusions accepted by

the District Court, except upon grounds of plain error.  *See,*

Douglass v. United Services Automobile Association, 79 F.3d 1415

(5th Cir.  1996).

    In Chambers, Alexandria, Louisiana, this _____ day of

_____, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

Page 21